UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Reginal Gaines, : | **Hon. Joseph H. Rodriguez** |
| Plaintiff, : | |
| | **Civil Action No. 08-3879** |
| v. : | |
| | |
| Gloucester City Police Dept , : | **OPINION** |
| William Crothers, City of Gloucester | |
| Gloucester City Prosecutor's Office : | |
| Borough of Audubon, Borough of Audubon | |
| Prosecutor's Officer, Robert A. Gleaner, : | |
| Deputy Chief Michael Kaye, Patrolman | |
| James W. Little, Patrolman J. Flood, : | |
| Carlos A. Depoder, Lt. G. Berglund, John and | |
| Jane Does 1-100, and ABC Entities/Corps. : | |
| 1-10, | |
| Defendants. : | |

Presently before the Court is Defendants' motion for summary judgment filed by Gloucester City Police Department, Gloucester City Chief of Police William G. Crothers (Crothers), City of Gloucester, Gloucester City Prosecutor's Officer, Deputy Chief Michael Kaye (Kaye), Jason Flood (Flood), Carlos Depoder (Depoder), James Little (Little), and Lieutenant George Berglund (Berglund).[1]

Plaintiff, Reginal Gaines (Plaintiff or Gaines) filed this action alleging violations of his constitutional rights arising out of the July 7, 2006 traffic stop and arrest in Gloucester City, New Jersey.[2] The Court heard oral argument on January 19, 2010. For

---

[1] The Borough of Audubon, Borough of Audubon Prosecutor's Office, and Robert A. Gleaner are also defendants in this case, but did not join the motion for summary judgment.

[2] Defendants removed the case to Federal court, as this court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

the reasons stated on the record that day as well as those stated below, Defendants' motion [Doc. No. 15] will be <u>granted in-part</u> and <u>denied in-part</u>.

## FACTUAL & PROCEDURAL BACKGROUND

On July 7, 2006 at approximately 10:00 pm, Gaines, a forty-five year old African American male was driving in Gloucester City and saw a police car on his left. (Def.'s Statement of Undisputed Material Facts at ¶ 7.) That police car, driven by Officer Little, turned to follow Gaines. Officer Little testified that Gaines was not speeding, his lights were on, and there was nothing suspicious about him. (Pl.'s Responsive Statement of Material Facts at ¶ 8.) However, when Gaines turned right without using his turn signal, the overhead lights of the trailing police car illuminated. (Def.'s Statement of Undisputed Material Facts at ¶ 9.) While Little was checking Plaintiff's information and writing a ticket inside the police car, Plaintiff got out of his car. Plaintiff does not dispute that he got out of his car, but explains that he did so in order to check his car lights after Little told him he had been pulled over because his tag light was out. (Pl.'s Responsive Statement of Material Facts at ¶ 10.) Officer Little ordered Plaintiff to get back in his car and when Plaintiff did not immediately obey, Little advised him that he was under arrest. (Def.'s Statement of Undisputed Material Facts at ¶¶ 11, 12.) Plaintiff denies that he was told he was under arrest, but agrees that when the officer grabbed his wrist he pulled away. (Pl.'s Responsive Statement of Material Facts at ¶¶ 12, 13.) Gaines then got back into his car refusing to allow Little to handcuff him. Officer Little called for police assistance and then advised Gaines he was going to spray him with Oleoresin Capsicum (OC) spray, which he did.

Officers Flood and Depoder responded to Little's call for assistance. When Flood

and Depoder arrived, Plaintiff stepped out of his car with his hands on his sides. (Def.'s Statement of Undisputed Material Facts at ¶ 17.) Plaintiff and Officer Little testified that no verbal or physical altercation was taking place when the other officers arrived. Plaintiff testified that an officer who he described as white came toward him with a dog. (Id. at ¶ 19.) That officer was Officer Flood, who allegedly stated, "Police, you're under arrest, stop resisting or I'll send my dog." (Pl.'s Responsive Statement of Material Facts at ¶ 21 (citing Flood Dep. at 23:3-7.)) Officer Flood never released his dog.

The actions taken by Officer Depoder are in dispute. Defendants claim that he used no force against the plaintiff. However, Plaintiff denies that statement and alleges that Depoder ran toward Plaintiff, took him to the ground, and handcuffed him. (Id. at ¶ 23.) In his deposition, Depoder testified that he saw a "push/pull back and forth in between the door and the car" between Officer Little and Gaines. (Depoder Dep. at 53:1-5.) Depoder then testified that he jumped out the of the passenger seat, ran towards Gaines, grabbed Gaines by the arm and shoulder and directed him to the ground. (Id. at 54:8-12.)

Gaines alleges that the officers "jumped" him and one officer put his foot into Gaines's neck. Gaines was then placed in the back of the police car. Parties agree that Plaintiff suffered no permanent physical injuries, but Plaintiff claims that he suffers from lack of sleep "among other injuries" due to the trauma caused by the event. (Pl.'s Responsive Statement of Material Facts at ¶ 24.)

Gloucester City police cars are equipped with mobile video cameras. However, according to Lieutenant Berglund's Internal Affairs Report, Officer Little's mobile videotape ran out prior to this incident. (Pl.'s Supplemental Statement of Material Facts

at ¶ 5.) Little testified that he realized the tape was full when he returned to his vehicle after placing Gaines in the back of the patrol vehicle. (Little Dep. at 56:16-20.) The event was also not recorded on Flood's car's camera due to the way he parked his vehicle. Officer Flood testified that his camera had not worked in some time and that nothing had been done to repair it despite the fact that he told a superior it was broken. (Flood Dep. at 21:6-7 - 22:8-15.)

Following his arrest, Gaines was found guilty of failure to maintain lanes and failing to use a turn signal. (Def.'s Statement of Undisputed Material Facts at ¶ 34.) In addition to the traffic violations, Plaintiff was charged with disorderly conduct, resisting arrest, obstruction and aggravated assault. (Pl.'s Supplemental Statement of Material Facts at ¶ 3.) After a trial in Audubon Municipal Court, Plaintiff was found not guilty of those offenses.

Plaintiff lodged a citizen's complaint against Officer Little with the Gloucester City Police Department. Accordingly, Lieutenant Berglund opened an internal affairs investigation. Defendants allege that Plaintiff refused to participate in the investigation and that as a result Berglund concluded that the allegations were unsubstantiated. (Def.'s Statement of Undisputed Material Facts at ¶¶ 28,29.) Plaintiff alleges that his criminal attorney advised Berglund that while the criminal matter was pending, Plaintiff would be unable to give any statements.

The Camden County Prosecutor's Office also initiated an investigation of the incident following a complaint filed by Gaines against Officer Little. (Id. at ¶ 30.) The Prosecutor found insufficient evidence to bring a criminal prosecution and declined to pursue the matter. A copy of those findings was sent to Gaines. Gaines also filed a

municipal complaint against Officer Little alleging simple assault. Officer Little was found not guilty. (Id. at ¶ 36.)

Gaines initiated this Section 1983 action against Defendants seeking damages, reasonable attorney's fees, and costs of court. Count I of the Complaint alleges that Defendants' acts constitute a violation of his individual civil and constitutional rights, as he claims he was subjected to excessive force and false imprisonment and was deprived of his right to due process.[3] Plaintiff further alleges that the Defendants failed to train and supervise law enforcement officers and failed to correct the unconstitutional practices of subordinates. Count I further alleges that Defendants continually condoned and ratified a history of unconstitutional practices despite allegations over the years of excessive force; implicitly taught or encouraged a pattern, practice and policy of excessive force; and improperly screened, hired, trained, supervised, disciplined, and retained dangerous law enforcement officers. Count II alleges the same except that it asserts those claims against Defendants in their individual capacity and as to the municipal defendants.

Count III alleges a claim for failure to train and/or supervise under 42 U.S.C. § 1983. This failure, the plaintiff asserts, shows that the Defendants were deliberately indifferent to the rights of the plaintiff, and that the failure to train reflects a deliberate choice by the municipality to have such policies become custom, practice, or policy.

The remainder of the Complaint asserts State Law claims brought pursuant to the

---

[3] Plaintiff does not allege that Chief Crothers, Deputy Chief Kaye, or Lieutenant Berglund participated in the alleged use of excessive force or that they direct subordinates to use excessive force. (Def.'s Statement of Undisputed Material Facts at ¶¶ 2, 4, 6.)

5

New Jersey Tort Claims Act. Count IV alleges force used against Plaintiff constitutes a violation of the New Jersey Constitution. Count V asserts claims for negligent hiring, supervision, disciplining, and retention, as well as false entering, false imprisonment, excessive force and abuse of process. Count VI specifically asserts claims for false imprisonment and invasion of privacy. Furthermore, in Count VI Plaintiff alleges that Defendants Gloucester City Policy Department, Chief Crothers, Gloucester City Prosecutors Office, Borough of Audubon, Audubon Prosecutors office, and Robert Gleaner are all liable under the doctrine of *respondeat superior* for permitting such conditions to exist that facilitated and encouraged such conduct. Finally, in County VII Plaintiff alleges that the acts of Defendants Little, Flood, and Depoder constituted an assault against Gaines.

The Gloucester City Defendants filed this motion for partial summary judgment seeking to narrow the claims at issue. Defendants contend that Plaintiff's claims for excessive force against Flood and Depoder are not sustainable because there is no evidence in the record to corroborate Plaintiff's allegations.[4] Defendants further contend that the City of Gloucester and its subdivisions cannot be held liable because there is no evidence of a custom or policy encouraging unconstitutional conduct. Finally, Defendants assert that the state law torts claims are not cognizable because Plaintiff cannot overcome the Torts Claims Act's verbal threshold.

## DISCUSSION

### I.     Summary Judgment Standard of Review

---

[4] Defendants do not dispute that there is a genuine issue of material fact as to whether the force used by Officer Little constitutes excessive force.

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon

7

mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II. Analysis

The Court addresses each of Defendants' arguments in support of summary judgment below.

### A. Excessive Force by Officer Flood

There is no issue of material fact as to whether Officer Flood's use of the police canine to intimidate the plaintiff constitutes excessive force.

A Fourth Amendment excessive force claim calls for an evaluation of whether a police officer's actions are objectively reasonable in light of the facts and circumstances confronting him. Graham v. Conner, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Id. at 396.  Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.' " Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 397, 109 S.Ct. 1865).

Plaintiff contends that by threatening him with the police dog, Officer Flood exceeded the bounds of what can be considered reasonable force.  Furthermore, Plaintiff argues that the policy of the City of Gloucester Police Department states that the use of a canine for minor motor vehicle stops is unnecessary.  However, in his deposition, Gaines admits that the dog was not released, and there is no evidence that the dog bit scratched, or harmed him in any way.  (Gaines Dep. at 67:18-23.)

In a similar case, the District Court of Colorado held that, the mere presence of a police dog, while intimidating, does not amount to excessive force.  Navratil v. Parker, 726 F.Supp. 800, 803 (D.Colo. 1989).  Just like the plaintiff in that case, the plaintiff here does not assert that the police dog was used as any more than an instrument of intimidation.  In addition, the Court recognizes that Officers Flood and Depoder were called in as back-up and arrived without a full understanding of the situation they faced.  The Court therefore concludes that there is no genuine issue of material fact as to the reasonableness of force used by Officer Flood.

**B.      Excessive Force by Officer Depoder**

There is sufficient evidence to withstand summary judgment as to Officer

9

Depoder's use of force during the course of the arrest.

While the testimony regarding Officer Depoder is contradictory, viewing the facts in the light most favorable to the non-moving party a reasonable fact finder could find that Officer Depoder's actions were unreasonable.  It appears that the plaintiff was under the control of the police before Officer Depoder allegedly forcefully arrested him.  Officer Flood had threatened to release his canine if Plaintiff did not cooperate with the officers, and there is no evidence that Gaines resisted or threatened officer safety after Officer Flood threatened him with the canine.  Furthermore, Gaines testified that officers converged on him once he was on the ground and that one of the officers put their knee or foot into his neck. (Gaines Dep. at 29:1-15.)

While the Court recognizes that "[n]ot every push or shove, even if it may later seem unnecessary, violates the constitution," Graham v. Conner, 490 U.S. at 396, the Court cannot conclude that Officer Depoder's actions were objectively reasonable given the circumstances at the time of the arrest.  Left only with individual recollections of the events, the Court agrees that there are genuine issues of material fact in dispute as to Depoder's conduct.  Accordingly, summary judgment is denied as to Officer Depoder.

**C.    Municipal Liability**

There is no issue of material fact as to whether the acts or omissions of Gloucester City or the Gloucester City Police Department constitute a policy or custom that caused the plaintiff's injury.

Plaintiff alleges that the actions taken by the officers in this case reveal a deliberate indifference to the alleged constitutional violations suffered by the plaintiff.  He argues the officers involved in this matter were not trained in the proper use of

mobile video equipment; the proper procedures were not followed in the handling of the videotapes; nothing was done to ensure that video system was working as required by the policy; the department failed to follow the policy of making random checks of the mobile video equipment; training was lacking as to use of OC spray; and training was lacking as to use of the police canine. The plaintiff states that given the errors made, it is clear that the police department was deliberately indifferent to its own policies and procedures.

42 U.S.C. § 1983 provides a vehicle for private parties to enforce their Constitutional or other federally-protected rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

In Monell v. Dep't of Soc. Servs., the U.S. Supreme Court held that municipalities are "among those persons to whom § 1983 applies." 436 U.S. at 690, 98 S.Ct. 2018. However, there is no respondeat superior theory of municipal liability. "A municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir.2006) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018 and Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984).

If, as here, the policy or custom is not facially unconstitutional, causation can be established only by demonstrating that "the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Brown, 520 U.S. at 407.

### 1. Inadequate Training

The failure to train municipal employees may give rise to a Section 1983 action against a municipality. See City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989). The Court in Harris held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. The issue in a failure to train case, is whether a training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy."

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. . . And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

Id. at 391. Continued adherence to an approach that the municipality knows or should know fails to prevent misconduct by employees may be the "deliberate indifference" necessary to trigger municipal liability. Brown, 520 U.S. at 407.

Plaintiff alleges that the officers involved in this matter were not trained in the proper use of mobile video equipment; training was lacking as to use of OC spray; and

12

training was lacking as to use of the police canine.  Plaintiff simply asserts that it is not unreasonable for a jury to find that this incident simply would not have happened had Gloucester City been enforcing its own policies.  This theory of causation does not support municipal liability.

While it is arguably suspect that the video equipment did not function during this incident, there is no evidence that there was an established policy not to provide and/or repair video equipment.  Similarly, it does not appear that the evidence supports a claim for municipal liability regarding the improper use of OC spray or police canines.  The record does not indicate that the errors made amount to more than system failures.  There is no indication that the municipality permits or encourages failures in order to prevent claims against officers.  Furthermore, the causal connection between the malfunction of mobile video equipment and Plaintiff's injury is attenuated at best.

    2.    **Failure to Investigate**

Likewise, Lieutenant George Berglund's dismissal of the internal investigation when the plaintiff failed to give a statement or respond to questions, does not create a genuine issue of material fact giving rise to a municipal liability claim.  Gloucester City Police Department's internal investigation policy explains that the investigating officer must realize that the Complainant may be a criminal defendant arising out of the same incident.  Plaintiff asserts that Berglund's dismissal of the plaintiff's internal complaint amounts to an unconstitutional policy or custom.

"A custom of failing to investigate citizen complaints may provide a basis for municipal liability if a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk." Brice v. City of

13

York, 528 F.Supp.2d 504, 518 (M.D.Pa. 2007) (quoting Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909, 912 (3d Cir. 2003)).  While Plaintiff seems to be complaining that Berglund failed to wait until the disposition of the criminal charges against Mr. Gaines before concluding his investigation, he points to no other "systemic problems" associated with the investigation.  The record in this case is devoid of complaints that present a pattern of constitutional violations.  In addition, nothing in the summary judgment record shows that the alleged defects in the City's internal investigation system were "closely related to the ultimate [constitutional] injury" alleged by Mr. Gaines.  Plaintiff has not met the heavy burden of showing that a single constitutional violation of this type, alone, demonstrates deliberate indifference on the part of Gloucester City or the supervisory defendants.

### 3. Dismissal of Claims against Gloucester County Police Department

In New Jersey, a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"); therefore, Defendants argue that the Gloucester City Police Department is not a proper defendant in this action for any of the claims, and is entitled to judgment as a matter of law on all counts of the Complaint.  See Adams v. City of Camden, 461 F.Supp.2d 263, 266 (D.N.J. 2006) (citing McGovern v. City of Jersey City, No. 98-5186, 2006 WL 42236 at *7 n.4 (D.N.J. Jan. 6, 2006) (police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities), Padilla v. Twp. of Cherry Hill, 110 F.App'x 272,

278 (3d Cir.2004) (same), DeBellis v. Kulp, 166 F.Supp.2d 255, 264 (E.D.Pa. 2001) (same)).[5]

Accordingly, claims against Gloucester City Police Department are dismissed.

### D. Liability of Supervisors Crothers, Kaye, and Berglund

As stated, Plaintiff may not rely upon the doctrine of *respondeat superior* to establish that these supervisory officers are liable for the constitutional torts committed by police officers. Instead, to establish that these supervisory defendants violated Section 1983, Gaines must prove that they personally participated in a violation of his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Allegations of personal involvement by a supervisor can be shown in one of four ways: (1) direct participation in the constitutional violation by the supervisor; (2) personal direction to subordinates to violate constitutional rights; (3) actual knowledge and acquiescence in a subordinate's constitutional violation; or (4) a failure to exercise supervisory authority with knowledge of the offending incident, a prior pattern of similar incidents, and inaction that could be found to have communicated a message of approval. See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1990).

Plaintiff alleges that Berglund directly participated in the constitutional violation in this matter by failing to ensure that the mobile equipment worked properly and by failing to properly perform the internal investigation in this matter. Crothers and Kaye also failed to ensure the mobile video equipment worked, which they allegedly had the

---

[5] Plaintiff does not dispute this argument.

responsibility to do. Again Plaintiff argues that it is reasonable to assume that this incident would not have occurred had the officers on the scene believed they were being videotaped.

On the other hand, Defendants argue, and the Court agrees, that Plaintiff has failed to allege or produce evidence that would satisfy any part of the Luzerne County test.[6] After careful review of the record, the Court does not find the requisite evidence that would sustain such a claim. Accordingly, claims against these defendants for direct liability are dismissed.

### E. The New Jersey Tort Claims Act

Counts Five, Six, and Seven of Plaintiff's Complaint are state-law tort claims brought against Gloucester City and its public employees. Under New Jersey law, tort liability against public entities and employees is governed by the New Jersey Tort Claims Act. N.J. Stat. Ann. § 59:1-1. The statute provides in relevant part that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. In addition to this "good faith" immunity, the Tort Claims Act also provides a pain and suffering threshold under N.J. Stat. Ann. § 59:9-2(d), which provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

Generally, with regard to permanent injury or disfigurement, the New Jersey Supreme

---

[6] Arguably, the inaction of supervisors amounts to direct participation; however, as explained *supra*, the malfunction of mobile video equipment did not cause this injury.

Court has held that this provision precludes recovery for pain and suffering based on subjective evidence or minor incidents. Collins v. Union County Jail, 150 N.J. 407, 413, 696 A.2d 625 (1997); see also Thorpe v. Cohen, 258 N.J. Super. 523, 529, 610 A.2d 878 (N.J. Super. Ct. App. Div. 1992) (holding plaintiff's chronic lumbosacral sprain did not amount to an objective injury). Furthermore, the injury must be severe enough to amount to permanent loss of a bodily function, a permanent disfigurement, or dismemberment. Collins, 150 N.J. at 413. This threshold has been held to apply to common law false arrest/false imprisonment claims. Dela Cruz v. Borough of Hillsdale, 183 N.J. 149, 153, 870 A.2d 259 (2005).

In Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), the New Jersey Supreme Court held that the permanent loss of a bodily function must be "substantial." Id. at 406. The Brooks Court established a two-pronged standard for evaluating whether a plaintiff's injuries constitute a "permanent loss of a bodily function:" (1) objective medical evidence of permanent injury and (2) a permanent loss of a bodily function that is substantial. Id.; see also Gilhooley v. County of Union, 164 N.J. 533, 540-41, 753 A.2d 1137 (2000). The plaintiff in Brooks suffered from permanent neck and back injuries giving rise to chronic pain and limiting motion, but not precluding her from functioning in her employment or as a homemaker. The Court therefore concluded that she had not suffered a "permanent loss of a bodily function" under the Act. Brooks, 150 N.J. at 406.

The Supreme Court's decision in Ponte v. Overeem, 171 N.J. 46, 791 A.2d 1002 (2002) is also instructive. In Ponte, the New Jersey Supreme Court examined the evidence regarding the plaintiff's knee injury to determine the "nature or degree of ongoing impairment." Id. at 53. That evidence indicated no limits to his range of

17

motion, nor impairment to his gait or ability to walk.  He also failed to demonstrate any permanent instability in the knee.  Moreover, nothing in the record suggested that the plaintiff was restricted because of his knee in performing his work, household chores, yard work, or exercising activities.  The Court therefore concluded that he had failed to establish a loss of normal bodily function that is both permanent and substantial. Id. at 54.

In this case, there is not an allegation of permanent loss of a bodily function.  Plaintiff admitted this during his deposition:

>     Q. Do you have any permanent damage to your back or neck?
>     A. No, not from them, no.

(Gaines Dep. at 30:6-8.)

>     * * *
>     Q. You didn't have any bruises other than the scratch on your wrist, right?
>     A. Yeah. Other than the scratch on my wrist, they didn't kill me.

(Gaines Dep. at 70:3-25; 71:1-5.)  Furthermore, plaintiff's answers to interrogatories make clear that he did not receive any medical attention as a result of his encounter with Patrolman Little.  (Gaines Interrogs. at 11, 12.)

Plaintiff on the other hand argues that another provision of the Tort Claims Act creates an exception to the pain and suffering threshold.  N.J. Stat. Ann. § 59:3-14 (b), providing:

>     Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

Therefore, if the actions of these officers are deemed to constitute malicious or willful misconduct or the court decides that they acted outside the scope of their employment, the fact that Plaintiff suffered no severe or permanent physical injury will not bar the

state law claims.

"Willful misconduct is 'the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. . . . [I]t requires much more than an absence of good faith and much more than negligence.' " Mantz v. Chain, 239 F.Supp.2d 486, 508 (D.N.J. 2002). In Fielder v. Stonack, 141 N.J. 101, 125-26, 661 A.2d 231 (1995), the New Jersey Supreme Court defined willful misconduct in the context of a police pursuit explaining, "willful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline . . ."

For purposes of the Tort Claims Act, "acts that are committed within the scope of employment 'are those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.' " Mantz, 239 F.Supp.2d at 508 n.6 (D.N.J. 2002) (quoting Hill v. Algor, 85 F.Supp.2d 391, 401 (D.N.J. 2000)).

Defendants argue that the record does not support an allegation that these officers conduct was willful or malicious. However, the Court finds that a jury is in the best position to determine whether the actions of Officers Flood and Depoder constitute willful misconduct.

## Conclusion

For the reasons stated herein, there is no issue of material fact as to Plaintiff's excessive force claim against Officer Flood; Plaintiff's municipal liability claims; and

19

Plaintiff's claims against supervising officers Crothers, Kaye, and Berglund. These claims are accordingly dismissed as a matter of law. The Court finds that the excessive force claim against Officer Depoder withstands summary judgment and the New Jersey Tort Claims Act does not bar consideration of the surviving claims. An appropriate Order shall issue.

Dated: March 3 , 2010

/s Joseph H. Rodriguez

Hon. Joseph H. Rodriguez,
United States District Judge